IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RAY DUNAKIN, DANIEL D. FITZGERALD,
WILLIAM E. HARILSON, and RANDALL                      No. CV-10-381-HZ
LUTCHMIE-MAJARAJ, individually and on
behalf of all others similarly situated,              OPINION AND ORDER

        Plaintiffs,

  v.

UPS SUPPLY CHAIN SOLUTIONS, INC.,

        Defendants.


Eleanor I. Morton
LEONARD CARDER LLP
1188 Franklin St.
Suite 201
San Francisco, CA 94109

Jennifer Keating
LEONARD CARDER LLP
1330 Broadway, Suite 1450

1 - OPINION AND ORDER

Oakland, CA 94612

Lynn Rossman Faris
LEONARD CARDER LLP
1330 Broadway, Suite 1450
Oakland, CA 94612

Mark A. Friel
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 S.W. Oak Street
Suite 500
Portland, OR 97204

Steve D. Larson
STOLL STOLL BERNE LOKTING & SHLACHTER, PC
209 SW Oak Street
5th Floor
Portland, OR 97204

      Attorneys for Plaintiffs

Andrew Moriarty
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101

Calvin L. Keith
PERKINS COIE LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

Joshua L. Lute
PERKINS COIE LLP

Tammy M. Sittnick
PERKINS COIE LLP
10885 NE 4th Street, Suite 700
Bellevue, WA 98004

      Attorneys for Defendant

2 - OPINION AND ORDER

## INTRODUCTION

Plaintiffs Ray Dunakin ("Dunakin"), Daniel D. Fitzgerald ("Fitzgerald"), William E. Harilson ("Harilson"), and Randall Lutchmie-Maharaj ("Lutchmie-Maharaj") (collectively, "Plaintiffs") bring this action on behalf of themselves and similarly situated drivers of UPS Supply Chain Solutions, Inc. ("UPS SCS" or "Defendant"). They seek to certify three nationwide classes of drivers (collectively, "Drivers") to recover wages and expenses allegedly denied to them by Defendant. Plaintiffs allege that Defendant misclassified Drivers as "independent contractors" instead of employees, and allege that Defendant's nation-wide scheme results in the denial of minimum wage and overtime pay to Drivers and passes on Defendant's business expenses to Drivers. They claim that this violates federal and state laws, specifically section 16(b) of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the common law of unjust enrichment in various states across the country.

Now before me is Defendant's motion to transfer this case to the United States District Court for the Southern District of Florida ("Southern District of Florida") (doc. #81) pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

This nationwide case was filed on April 6, 2010, as a follow-up to a class-wide settlement in Labrie v. UPS Supply Chain Solutions, Inc., No. C08-3182 PJH, 2009 WL 723599 (N.D. Cal. 2009).[1] See Pl.'s Opp'n to Def.'s Mot. to Transfer ("Pls.' Opp'n"), p. 1. Defendant is a national corporation and a wholly owned subsidiary of United Parcel Services, Inc. ("UPS Inc."). Compl.,

---

[1] LaBrie was settled for $12.8 million in March 2010. See Compl., ¶ 3; see also Reply Mem. in Supp. of Mot. to Transfer ("Reply"), p. 10.

¶ 2.  UPS Inc.'s business consists of expedited on-demand package delivery and pick-up service to business customers.  Id., ¶¶ 5, 18.  It uses an integrated nationwide network of dispatch and transportation from warehouses run by Defendant.  Id.

Plaintiffs are or were employed as "independent contractors" whose responsibilities include the timely delivery and pick-up of packages.  Id., ¶ 19.  Dunakin is a resident of Oregon City, in Clackamas County, Oregon.  Id., ¶ 4.  Fitzgerald is a resident of Vancouver, Washington, in Clark County, Washington.  Harilson and Lutchmie-Majaraj are residents of Louisville, Kentucky and Orlando, Florida, respectively.  Id.  Dunakin and Fitzgerald are the only named Plaintiffs who work or have worked from Defendant's warehouses in and around Portland, Oregon.  Id.

Defendant is incorporated in Delaware.  Id., ¶ 5.  Its headquarters is in Atlanta, Georgia, and its principal place of business is in Georgia.  Id., ¶¶ 5, 8; see also Decl. of Calvin L. Keith in Supp. of Mot. to Transfer ("Keith Decl."), ¶ 2; Decl. of Andrew Moriarty in Supp. of Mot. to Transfer ("Moriarty Decl."), ¶ 4.  Defendant has a warehouse and does business in, among other locations, Portland, Oregon, and has entered into independent contractor agreements in Portland, Oregon.[2]  Compl., ¶ 8.

On February 23, 2010, Ernesto Carrera filed a putative collective action against Defendant in the Southern District of Florida alleging Defendant violated the FLSA by misclassifying a nationwide class of independent contractor couriers and by denying them minimum wage and overtime pay.  See Keith Decl., ¶ 6; see also Id., Ex. A; Carrera v. UPS

---

[2] The record does not indicate the number of independent contractor agreements entered into by Defendant in Oregon.

Supply Chain Solutions, Inc., No. 10–60263–CIV, 2011 WL 1303151 (S.D. Fla. 2011).  On

March 19, 2010, plaintiff in Carrera filed a motion for conditional class certification.  Keith

Decl., ¶ 7.

     In April 2010, Defendant petitioned the United States Judicial Panel on Multidistrict

Litigation ("MDL Panel") to centralize the pre-trial proceedings of this case and Carrera pursuant

to 28 U.S.C. § 1407.  Keith Decl., ¶ 9; Id., Ex. D.  The MDL Panel, however, denied the motion

on August 6, 2010, on the basis that the two actions were not "sufficiently complex and/or

numerous to justify Section 1407 at [the] time."[3]  Id., Ex. E, p. 1.

     In a Findings and Recommendation issued in August 2010, the Honorable William C.

Turnoff conditionally certified Carrera as a Florida collective action.  See Id., Ex. B., p.11

(emphasis added).  In March 31, 2011, however, the Honorable Joan A. Lenard issued an order

conditionally certifying Carrera as a nationwide collective action.  See Id., Ex. C, p. 16 (emphasis

added).

     As of April 28, 2011, there were 621 individuals who had chosen to opt in as plaintiffs in

this action.[4]  See Id., ¶ 3.  The place of residence for 618 of the opt-in plaintiffs are as follows:

(1) four, or .65%, of the opt-in plaintiffs reside in Oregon; (2) 614, or 99.35%, of the opt-in

plaintiffs reside outside of Oregon; (3) 591, or 95.5%, of the opt-in plaintiffs reside outside of

Oregon and the four states bordering Oregon (Washington, California, Idaho, and Nevada); and

---

     [3] "Factors in a denial of [28 U.S.C. 1404(a)] transfer are different from the criteria for
Section 1407 centralization."  E.g., In re Radioshack Corp. "ERISA" Litig., 528 F. Supp. 2d
1348, 1349 (MDL Panel 2007) (citing In re Regents of Univ. of Cal., 964 F.2d 1128, 1133 (Fed.
Cir. 1992)).

     [4] Of the 621 opt-in plaintiffs, two withdrew and one failed to indicate her place of
residence.  Keith Decl., ¶ 5.

(4) 468, or 76%, of the opt-in plaintiffs reside in states east of the Mississippi River.  See Id., ¶ 5.

Of these, aproximately thirty-four opt-in plaintiffs reside in Florida.  See Id., Ex. C., p.8 n.7.

Plaintiffs claim Defendant failed to pay them minimum wage and overtime compensation

pursuant to FLSA.  Compl., ¶ 40.  Plaintiffs also claim Defendant has been unjustly enriched,

thereby violating the common law of various states.  Id., ¶ 13.  Lastly, Plaintiffs seek a claim for

injunctive relief.  Id., ¶ 50.  Plaintiffs pray for: (1) an order certifying Plaintiffs' FLSA claims as a

collective action under 29 U.S.C. § 216(b); (2) an order certifying this action as a nationwide

class action pursuant to Fed. R. Civ. P. 23; (3) unpaid wages; and (4) injunctive relief.  See Id.,

Prayer For Relief.

## STANDARDS

### I. First-to-File Rule

The "first-to-file rule" is a doctrine of federal comity that permits a district court to

decline jurisdiction over an action "when a complaint involving the same parties and issues has

already been filed in another district."  Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95

(9th Cir. 1982).  "The most basic aspect of the first-to-file rule is that it is discretionary; 'an

ample degree of discretion, appropriate for disciplined and experienced judges, must be left to

the lower courts.'"  Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 628 (9th Cir. 1991)

(quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952)).

Although discretionary, the rule "serves the purpose of promoting efficiency . . . and should not

be disregarded lightly."  Church of Scientology of Ca. v. U.S. Dept. of Army, 611 F.2d 738, 750

(9th Cir. 1979).  In applying the first-to-file rule, a court looks to three threshold factors: "(1) the

chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the

issues."  Alltrade, 946 F.2d at 625-26.  If this action meets the requirements of the first-to-file

rule, the court has the discretion to transfer, stay, or dismiss the action.  Id. at 622. The district

court retains the discretion, however, to disregard the first-to-file rule in the interests of equity.

Id.

## II. Transfer Pursuant to 28 U.S.C. § 1404(a)

Venue is governed by 28 U.S.C. § 1404(a).  See, e.g., Lightspeed Aviation, Inc. v. Bose

Corp., No. 10-CV-239-BR, 2010 WL 3928624, at *2 (D. Or. 2010).  28 U.S.C. § 1404(a)

provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where the action might

have been brought."  The purpose of the 28 U.S.C. § 1404(a) is to "prevent the waste of 'time,

energy and money' and to 'protect litigants, witnesses, and the public against unnecessary

inconvenience and expense.'"  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation

omitted).

The burden is on the moving party to demonstrate that the balance of conveniences favors

the transfer.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.1979).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the

transferee district;(2) that the transferee district is one where the action might have been brought;

and (3) that the transfer will serve the convenience of the parties and witnesses and will promote

the interests of justice.  See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F.

Supp. 503, 506 (C.D. Cal 1992).  A motion to transfer lies within the broad discretion of the

district court, and must be determined on an individualized basis.  See Jones v. GNC

Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

7 - OPINION AND ORDER

In determining the convenience of the parties and witnesses and the interests of justice, a court may consider a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.  Jones, 211 F.3d at 498-99.

The parties do not dispute that venue in the Southern District of Florida is proper.  They, however, dispute whether the convenience and justice factors support a transfer.

## DISCUSSION

### I. First-to-File Rule

Defendant contends that the ability to consolidate this case with Carrera, the first-filed action, favors a transfer.  Plaintiffs simply respond that LaBrie, not Carrera, was filed first.

I find the first factor under the first-to-file rule, the chronology of the two actions, is clearly satisfied because the complaint in Carrera was filed before the complaint in this case was filed.  See Pls.' Opp'n, p. 15; see also Reply, p. 10.  The second factor, similarity of the parties, has also been satisfied.  The first-to-file rule requires the parties be "substantially similar."  See, e.g., Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).  In the context of a class action or a collective action, "the classes, and not the class representatives, are compared."  Adoma v. Univ. of Phx., Inc., 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (citing Ross v. U.S. Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).  Plaintiff in Carrera seeks to certify a nationwide class that is nearly identical to the nationwide class sought to be certified here.  In Carrera, plaintiff seeks "certification of a class of all current and former

8 - OPINION AND ORDER

delivery drivers who worked overtime and regular hours for [Defendant] within the last three

years and who did not receive minimum wage and overtime payment."  Keith Decl., Ex. C, p. 4.

Similarly, here Plaintiffs seek to certify a nationwide class "who perform or performed pick-up

and/or delivery services for Defendant . . . as purported 'independent contractors' and who file

written Consents to Become Party Plaintiffs in this Action, and who did not participate in LaBrie

. . . , for the period commencing three years prior to the filing of such Consents."  See Pls.' Mot.

For Collective Action, p. 1.  They also seek to certify a nationwide class "who perform or

performed pick-up and/or delivery services for Defendant . . . as purported 'independent

contractors' and who participated in the settlement of LaBrie . . . , and who file written Consents

to Become Party Plaintiffs in this Action, for the period commencing November 1, 2009."  See

Pls.' Mot. For Collective Action, p. 1.  Lastly, they seek to certify a nationwide class "who

perform or performed pick-up and/or delivery services . . . for Defendant . . . as purported

'independent contractors,' who used their own vehicle to perform the [s]ervices and who paid for

fuel and other costs relating to the performance of the [s]ervices without full reimbursement from

UPS SCS, for the period of the statute of limitations for unjust enrichment in the state(s) whose

laws apply."  See Pls.' Mot. For Collective Action, p. 1-2.  I find that the putative classes in both

cases are substantially similar.  Furthermore, it is undisputed that Defendant is the named

defendant in both this action and Carrera.  Accordingly, the second factor of the first-to-file rule

weighs in favor of a transfer because there is a substantial similarity of parties between the two

actions.  See Inherent.com, 420 F. Supp. 2d at 1097.

        The third and last factor, similarity of issues, has also been satisfied.  Under this factor,

the issues in the two actions need not be identical, but need only be "substantially similar."

9 - OPINION AND ORDER

Adoma, 711 F. Supp. 2d at 1147; Inherent.com, 420 F. Supp. 2d at 1097.  Here, both actions

allege similar claims against Defendant under FLSA.  Although Dunakin asserts an additional

unjust enrichment claim and a claim for injunctive relief,  Compl., ¶¶ 47, 51, these additional

claims do not necessarily render the first-to-file rule inapplicable.  The central issue in both

Carrera and this case is whether a class of delivery drivers received minimum wage and overtime

payments.  Addressing the FLSA, unjust enrichment, and injunctive relief claims all require

analysis of the same common factual issues implicated in both cases.  Furthermore, the resolution

of the claims in both cases turn on nearly identical factual allegations in both cases.  In short, all

the factors tip in favor of transfer under the first-to-file rule.

　　　The first-to-file rule, however, does not apply where there is bad faith, anticipatory suit,

and forum shopping.  See, e.g., Alltrade, 946 F.2d at 628.  Plaintiffs appear to assert that

Defendant has delayed in bringing this motion and has engaged in forum shopping.  See Pls.'

Opp'n, p. 9, 14.  It was not until March 31, 2011, however, that the Honorable Joan A. Lenard

conditionally certified the putative class in Carrera as a nationwide action.  See Keith Decl., Ex.

C, p. 16.  I find no delay where Defendant filed this motion on April 28, 2011, within one month

after Judge Lenard's conditional certification order.  With respect to forum shopping, Defendant

has consistently attempted to transfer this case to the Southern District of Florida.  In April 2010,

Defendant moved the MDL Panel to centralize this case with Carrera pursuant to 28 U.S.C. §

1407.  See Keith Decl., ¶ 9.  On April 28, 2011, Defendant filed a motion to transfer this case to

the Souther District of Florida.  In light of the record, I find no bad faith or forum shopping on

the part of Defendant.

In sum, I find that the factors to be considered in determining whether transfer is appropriate under the first-to-file rule weigh heavily in favor of transfer. See Herman v. YellowPages.Com, LLC, Civil Nos. 10cv0195 JAH(AJB), 10cv0798 JAH(AJB), 2011 WL 1615174, at *4 n.5 (S.D. Cal. 2011) (declining to address defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) after granting defendant's motion to transfer under the first-to-file rule). Under this court's broad discretion, I find that judicial efficiency and the interests of the parties would be best served by transferring this action to the Southern District of Florida rather than staying or dismissing it.

## II. Transfer Pursuant to 28 U.S.C. § 1404(a)

A transfer here is also supported under 28 U.S.C. § 1404(a). As noted above, a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988).

### A. Plaintiff's Choice of Forum

A plaintiff's choice of forum carries substantial weight in a motion to transfer venue. See, e.g., Foster v. Nationwide Mut. Ins. Co., No. 07–04928–SI, 2007 WL 4410408, at *2 (N.D. Cal. 2007). However, a plaintiff's choice of forum is entitled to less weight in evaluating venue transfer when the plaintiff represents a nationwide class as here. See, e.g., Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); see also Johns v. Panera Bread Co., No. 08-1071, 2008 WL 2811827, at *2 (N.D. Cal. 2008) (stating courts give less weight to plaintiff's choice of forum when the plaintiff seeks to represent a nationwide class); Shultz v. Hyatt Vacation Mktg. Corp., No. 10-CV-04568-LHK, 2011 WL 768735, at *3 (N.D. Cal. 2011) ("A class action with potential

11 - OPINION AND ORDER

class members located all over the United States has been found to reduce the significance of the plaintiff's choice."). "[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the [plaintiff's] cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 525-26 (1947).

Here, the record shows that of the 618 opt-in plaintiffs, only four reside in Oregon. Of the named Plaintiffs, only Dunakin resides in Oregon. The fact that one of the named Plaintiffs and four of the 618 opt-in plaintiffs reside in Oregon is "no more forceful than the link between the thousands of potential class members and their respective districts." See It. Colors Rest. v. Am. Express Co., No. C 03-3719 SI, 2003 WL 22682482, at *4 (N.D. Cal. 2003).

However, even in a class action, when weighing the plaintiff's choice of forum, "consideration must be given to the extent of both [the plaintiff's] and [the defendant's] contacts with the forum, including those relating to [the plaintiff's] cause of action." Lou, 834 F.2d at 739. Here, the record indicates that Defendant has a warehouse and does business in Oregon. See Compl. ¶¶ 4, 8. It also shows that Dunakin and Fitzgerald worked from Defendant's warehouse in Oregon and suggests that Defendant has entered into an unspecified number of independent contractor agreements in Portland, Oregon. See Id.

The record, however, shows that Defendant's headquarters and principal place of business are located in Georgia and that Defendant is incorporated in Delaware. It also shows that Defendant offers carrier service across the entire nation. I find that the contacts alleged here are equally applicable to any other federal district Defendant has provided its services and entered

12 - OPINION AND ORDER

into independent contractor agreements.  Because Plaintiffs bring this case as a nationwide class action where the vast majority of opt-in plaintiffs are located throughout the United States, and because of the minimal contacts the parties have had with Oregon, the weight accorded to the District of Oregon as Plaintiffs' choice of forum is greatly diminished.

Plaintiffs assert that putative class members have made their preference clear by opting in to this case instead of Carrera because as of May 12, 2011, 638 plaintiffs have opted in to this action whereas only thirty-one have opted in to Carrera.  However, the record shows that counsel here has had over a year to contact potential opt-ins, using information gathered during LaBrie. In contrast, the court in Carrera only recently approved notice to potential opt-ins on May 11, 2011.  See Decl. of Kelley-Ann Cartwright in Supp. of Mot. to Transfer ("Cartwright Decl."), ¶ 2. Moreover, nothing in the record indicates that any opt-in plaintiff in this case knew of the Carrera action, let alone chose to opt-in to this action over Carrera.

For the foregoing reasons, I accord only minimal deference to this factor in my analysis.

**B. Convenience of Parties and Witnesses**

Defendant argues that the Southern District of Florida is more convenient because two of the four named Plaintiffs reside in Kentucky and Florida and because more opt-in plaintiffs reside in Florida than the entire west coast.  Plaintiffs respond that because this case is being brought as a putative class action, the majority of class members will never be deposed or be required to give testimony at trial.

With respect to the named parties, it is clearly more convenient for Dunakin and Fitzgerald to litigate their claims in the District of Oregon because they reside in Oregon and Washington, respectively.  It is also equally clear that convenience for Lutchmie-Majaraj,

13 - OPINION AND ORDER

Harilson, and Defendant would best be served by litigating the action in Florida. Lutchmie-Maharaj resides in Florida, and therefore, litigating this action there would undoubtedly be most convenient for him. Florida would also be a more convenient forum for Harilson because he resides in Kentucky, which is located much closer to Florida than Oregon. Similarly, a transfer to the Southern District of Florida would also be beneficial to Defendant because its headquarters and principal place of business are located in the neighboring state of Georgia.

I find that transferring this case would simply shift the financial burden to Dunakin and Fitzgerald, who reside in Oregon and Washington, respectively. Because the financial burden of traveling merely shifts rather than eliminates the inconvenience between the parties, the convenience to the parties results in virtual equipoise and does not sway in either of the parties' favor.[5]

I turn next to the convenience to potential witnesses. The convenience to witnesses is often recognized as the most important factor in ruling on a motion to transfer under 28 U.S.C. § 1404(a). See, e.g., Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc., No. CV 09-2140 PSG (JCx), 2010 WL 883831, at *8 (C.D. Cal. 2010). The court must not only consider the number and location of witnesses on each side, but also the importance of the witnesses to the case. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335-36 (9th Cir. 1984). In cases where a 28 U.S.C. § 1404(a) transfer is based on "the convenience of witnesses," courts usually require the party seeking transfer to designate: (1) the key witnesses to be called, (2) where these witnesses

_____

[5] Defendant appears to assert that a transfer to the Southern District of Florida is more convenient for its in-house lawyers in Atlanta, Georgia. See Reply, p. 4. This assertion lacks merit. See Pralinsky v. Mut. of Omaha Ins., No. C 08–03191 MHP, 2008 WL 4532563, at *2 (N.D. Cal. 2008) (stating "convenience of counsel is not considered in ruling on a section 1404(a) transfer motion").

are located, (3) a general statement of what their testimony will cover, and (4) why such

testimony is relevant or necessary.  See, e.g., A.J. Indus., Inc. v. U.S. Dist. Ct., 503 F.2d 384, 389

(9th Cir. 1974); see also Bomanite Corp. v. Newlook Int'l Inc., No. 07-1674, 2008 WL 1767037,

at *8 (E.D. Cal. 2008).  The convenience of non-party witnesses generally takes precedence over

the convenience of party witnesses. See Catch Curve, Inc. v. Venali, Inc., No. 05-4820, 2006 WL

4568799, at *3 (C.D. Cal. 2006).

     Here, the record shows that approximately thirty-four opt-in plaintiffs reside in Florida.

See Keith Decl., Ex. C., p.8 n.7.  It also shows that 591 opt-in plaintiffs , approximately 95.5% of

the total opt-ins, reside outside of Oregon and the four states that border it (Washington,

California, Idaho, and Nevada).  See Id., ¶ 5.  It further shows that 468 opt-in plaintiffs,

approximately 76% of the total opt-ins, reside in the eastern portion of the United States (states

east of the Mississippi River).  Id.  This information by itself, however, does not tilt the scales in

favor of a transfer because the record does not indicate if any opt-in plaintiff will testify.

     Defendant contends that although it is too soon to generate a comprehensive list of

specific witnesses, its key witnesses will most likely be Transportation Service Provider

Managers ("TSPM"), Regional Transport Center Managers ("RTCM"), and other management

involved in post-sales operations.[6]  The TSPMs and RTCMs report to Jackline Seguerra

("Seguerra"), the Division Manager for Defendant's post-sales service.  See Seguerra Decl., ¶ 1.

Six of the above managers reside east of the Mississippi River whereas only three live on the

---

    [6] There are eight TSPMs, and each is responsible for interfacing with the delivery drivers.
Decl. of Jackline Seguerra in Supp. of Mot. to Transfer ("Seguerra Decl."), ¶¶ 2-4.  There are
three RTCMs, and each oversees the dispatch of delivery opportunities to the delivery drivers.
Id.

15 - OPINION AND ORDER

West Coast.[7]  It also contends that no dispatch supervisor or dispatcher lives further west than Dallas, Texas, the site of Defendant's westernmost dispatch center.  Id., ¶ 6.

Plaintiffs concede that Seguerra is a key witness and acknowledge that the TSPMs and RTCMs may also be witnesses.  See Pls.' Opp'n, p. 4-5.  They assert, however, that if any of the managers are called to testify, they will be required to travel for trial testimony regardless because none of the witnesses reside in the Southern District of Florida.

The record shows that the majority of the managers reside and work closer to Florida than Oregon.  The record, however, also shows that several of the other prospective witnesses live on the West Coast.  Accordingly, I find that this factor is neutral.

### C. Ease of Access to the Evidence

Another factor a court may consider is the ease of access to the evidence.  Plaintiffs contend that sources of proof are no more available in Florida than in Oregon.  I agree with Plaintiffs and find this factor to be neutral.  See, e.g., Szegedy v. Keystone Food Prod., Inc., No. CV 08-5369 CAS (FFMx), 2009 WL 2767683, at *6 (C.D. Cal. 2009) ("[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.") (Citation omitted).

---

[7] The RTCMs work and reside in Atlanta, Georgia; Chicago, Illinois; and Dallas, Texas. Seguerra Decl., ¶ 3.  The TSPMs work and reside in Indianapolis, Indiana; Cleveland, Ohio; Rocky Hill, Connecticut; Durham, North Carolina; Houston, Texas; Spokane, Washington; Chicago, Illinois; and San Francisco, California.  Id., ¶ 4.  Seguerra works and resides in Los Angeles, California.  Id., ¶ 5.

**D. Familiarity of Each Forum with Applicable Law**

I find nothing suggesting that federal courts in the District of Oregon and the Southern District of Florida are not equally well-versed in any federal or state law applicable here. Accordingly, I find that this factor is neutral with respect to transfer.

**E. Feasibility of Consolidation**

Defendant asserts that because this case can be consolidated with Carrera, a transfer to the Southern District of Florida is warranted. Plaintiffs respond that because the parties have largely completed discovery, Defendant has sought transfer too late to avoid duplicative discovery with Carrera. Finally, Plaintiffs assert that this case is not amenable to consolidation with Carrera because of the additional claims brought here.

"The interest of justice can be decisive. An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." Gatdula v. CRST Int'l, Inc., No. CIV. 2:10-58 WBS CMK, 2011 WL 445798, at *3 (E.D. Cal. 2011) (internal quotations and citations omitted). As a general rule, cases should be transferred to districts where related actions are pending. See Parker v. FedEx Nat., Inc., No. 1:10-cv-1357-LJO-MJS, 2010 WL 5113809, at *4 (E.D. Cal. 2010) (citation omitted). The Supreme Court has stated: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). "The feasibility of consolidation is a significant factor in a transfer decision . . . [and] even the pendency of an action in another district is important because

17 - OPINION AND ORDER

of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." A.J. Indus., Inc., 503 F.2d at 389 (citations omitted).

Plaintiffs rely heavily on the argument that discovery in this case and Carrera are at different stages. Here, discovery for class certification closed on April 25, 2011. The record suggests that discovery regarding certification of the collective action in Carrera is still ongoing. A court faced with a motion to transfer pursuant to 28 U.S.C. § 1404(a), however, must consider more than just discovery issues. The purpose of transfer under 28 U.S.C. § 1404(a) "is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." See Papaleo v. Cingular Wireless Corp., No. C-07-1234 MMC, 2007 WL 1238713, at *2 (N.D. Cal. 2007) (citation omitted).

Clearly, there is substantial overlap between this case and Carrera because they both involve common questions of law and fact. Both actions name the same Defendant, contain nearly identical factual allegations, have overlapping legal claims, and are brought on behalf of the same putative class. Indeed, the legal theories and claims in both cases will turn on nearly the same facts. In fact, on March 31, 2011, Judge Lenard ordered the parties in Carrera to "confer and undertake efforts to avoid the unnecessary production of information or issuance of notice related to those potential plaintiffs whose claims were resolved as part of the Labrie action or whose claims are pending as part of the Dunakin action." Keith Decl., Ex. C, p. 16. That the court in Carrera precluded the parties from issuing any notice to the opt-in plaintiffs in the present case supports the conclusion that there are significant overlays of common questions of

18 - OPINION AND ORDER

law and fact and parties.  In light of the above, I find it likely that this case and Carrera would be consolidated if this case were transferred to the Southern District of Florida.

Furthermore, because Plaintiffs are complete with discovery regarding class certification, transferring this case to the Southern District of Florida could speed up discovery of class certification in Carrera if these actions were consolidated.  Because the deadline for merits discovery has not passed in either case, increased efficiencies from the coordination of merits discovery could also be beneficial to the parties in both actions.  In short, consolidation of these two cases could still eliminate the duplication of discovery.[8]

Significant coordination of other litigation activities could also be achieved if this case were consolidated with Carrera, especially if the cases were to proceed to trial.  With respect to the convenience of third-party witnesses, which often is the most significant factor, consolidation would likely remove the need for duplicative trial testimony.  See, e.g., Metz v. U.S. Life Ins. Co. in City of N.Y., 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) ("The convenience of non-party witnesses is a more important factor than the convenience of party witnesses.").

In sum, I find that this action is closely related to Carrera and find it likely that this case would be consolidated with Carrera if it were transferred to the Southern District of Florida. Consolidation would effectively conserve time and effort and avoid the unnecessary costs to the parties of litigating a separate, second lawsuit.  Furthermore, consolidation would eliminate substantial duplication of labor which would otherwise result from having separate judges hear each action separately.  Finally, consolidation would avoid the risk of potentially inconsistent

---

[8] Although Plaintiffs assert that the parties in Carrera appear to be engaged in discovery war, Plaintiffs' Opposition, p. 10, the record shows that all the outstanding discovery issues have been resolved.  See Cartwright Decl., ¶ 3.

rulings.  See Huene v. U.S., 743 F.2d 703, 704 (9th Cir. 1984).  I find that this factor weighs

heavily in favor of transfer.

### F.  The Relative Court Congestion and Time of Trial in Each Forum.

Defendant argues that this factor weighs in favor of transfer because the median time

from filing to resolution by trial in federal courts in the Southern District of Florida is only 21.9

months as compared to 25.3 months in the District Court of Oregon.  Plaintiffs respond that the

docket is lighter for federal courts in the District of Oregon than those in the Southern District of

Florida.  They argue that while only 1,661 private civil cases were commenced in the District of

Oregon for the twelve-month period ending March 31, 2010, 8,089 private civil cases were

commenced in the Southern District of Florida during the same period.  See Decl. of Lynn

Rossman Faris ("Faris Decl."), ¶ 9.  I find that the federal courts in the District of Oregon and the

Southern District of Florida are managing significant caseloads, and time to trial in both courts is

similar.  Accordingly, I find this factor is neutral in my analysis.

### G. Localized Interest in the Controversy

Both parties contend, and I agree, that this factor does not weight in favor of either forum.

Accordingly, I find that this factor is neutral.

### H. Defendant's Ability to Manage the Costs of Litigation

Plaintiffs assert that as a corporation, Defendant is better able to manage the financial

burden of traveling to Oregon than Plaintiffs, and therefore, transfer to the Southern District of

Florida would be improper.  Putting the legitimacy of this contention aside, I find that even if

Defendant here were better-equipped than Plaintiffs to absorb travel costs associated with

litigation, it would not outweigh the savings of time, money, and court resources that would result from consolidating this case with <u>Carerra</u>.

**CONCLUSION**

For the foregoing reasons, I find that the interests of judicial efficiency and equity weigh strongly in favor of transfer under the first-to-file rule.  Furthermore, I find that Defendant has carried its burden under 28 U.S.C. § 1404(a), and has demonstrated that in the interests of justice, a transfer is warranted here.  Defendant's motion to transfer (doc. #81) is granted.

IT IS SO ORDERED.

Dated this 27th day of June, 2011.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

21 - OPINION AND ORDER